# Payment of Expenses Associated with Travel by the President and Vice President

Funds appropriated for the official functioning of the offices of the President and the Vice President may be used for travel expenses only if the travel is reasonably related to an official purpose; and, official activities may be funded only from funds appropriated for such purposes. Thus appropriated funds should not be used to pay for political travel and political funds should not be used to pay for official travel.

Whether an event is official or political for purposes of paying its expenses must be determined on a case-by-case basis, and both the nature of the event and the nature of the individual involved should be considered.

Where both official and political activities occur on the same trip, the expenses of individuals on the trip for both political and official reasons can be apportioned between the government and a political committee on a basis which reflects the time spent on the respective activities. During the period of a presidential election campaign, Federal Election Commission regulations may require a different rule of allocation.

March 24, 1982

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This memorandum responds to your request for our advice about the payment of expenses associated with travel by the President or Vice President. We are to assume that travel by the President or Vice President may often include both official events, undertaken as part of the President's or Vice President's official roles as governmental leaders, and purely political events, undertaken for partisan purposes in order to advance the interests of the President's and Vice President's political party. This mixed character of much presidential and vice presidential travel follows naturally from their dual roles as governmental officials and leaders of their party. You have asked us to articulate the legal principles governing the allocation and payment of costs associated with such travel.

Several caveats must be noted at the outset. First, our opinion should not be read as a declaration that the generally applicable principles will necessarily lead to an inflexible result in a particular case. In fact, the principles are of such generality that they often will generate few determinate results. They thus must be viewed as general guides to decisionmaking. Second, the principles should be applied to a particular trip by the officials most familiar with the facts of the trip. Each case may present unique circumstances that will need to be taken into

account in determining, for instance, whether an event is "official" or "political" in character. As we will indicate, there is considerable room in this context for the careful use of informed discretion. Third, this opinion focuses on broadly applicable legal principles, not on the specific rules adopted by the Federal Election Commission for election activity. *See* 11 C.F.R. Chapter 1 (1981). If, in light of this opinion, particular questions arise, we will, of course, be glad to address them.

Furthermore, the principles discussed in this opinion may be fully understood only with an appreciation of the unique context presented by the peculiar functions and responsibilities of the President and Vice President in our system of government. They are the senior officials of the Executive Branch of government. Their official roles are necessarily political in the broad sense that they must formulate, explain, advocate, and defend policies. To the extent that the President and Vice President generate support for their policies and programs, they are also executing and fulfilling their official responsibilities. Even the most clearly partisan activity is not without some impact on the official activities of the President and Vice President.

By the same token, official success or failure by the President and Vice President has an inevitable and unavoidable impact on the standing of their political party, members of their party, and their party's candidates for public office. Thus, it is simply not possible to divide many of the actions of the President and Vice President into utterly official or purely political categories. To attempt to do so in most cases would ignore the nature of our political system and the structure of our government. Accordingly, efforts to establish such divisions must be approached with common sense and a good faith effort to apply the spirit of the principles we discuss in this memorandum, and they must be judged with considerable deference to the decisions of the persons directly involved in making the determinations.

With this background, our discussion will focus on three major questions. First, what are the basic legal principles to be applied, putting aside specialized restrictions formulated by the Federal Election Commission with regard to election activities? Second, how does one determine whether an event giving rise to an expense is "official" or "non-official" in character? Third, assuming that a trip involves events that are both official and non-official (or political) in character, may certain of the expenses for such a mixed trip be apportioned between the government, on the one hand, and a political committee, on the other hand? In the fourth section, we will discuss other considerations that bear on the issues discussed herein.

## I. Two Basic Norms

When considering payment of expenses associated with presidential and vice presidential travel, two major principles governing the use of appropriated funds must be borne in mind. First, appropriated funds may be spent only for the purposes for which they have been appropriated. 31 U.S.C. § 628; 52 Comp.

Gen. 504 (1973); 50 Comp. Gen. 534 (1971). Thus, funds appropriated for the official functioning of the offices of the President and the Vice President may be used for travel expenses only if the travel is reasonably related to an official purpose. If, however, there is no reasonable connection between the expense incurred and the official purposes to be served by an appropriation—as, generally speaking, there would not be when an expense is incurred purely for partisan political purposes—official funds may not be used to pay the expense.

The second basic principle is that, in general, official activities should be paid for only from funds appropriated for such purposes, unless Congress has authorized the support of such activities by other means. Stated another way, although appropriated funds should not be used for non-official purposes, it is equally true that outside sources of funds may not be used to pay for official activities. This latter principle, which prevents the unauthorized augmentation of appropriations, has been recognized by the Comptroller General on numerous occasions.[1] A problem concerning an unauthorized augmentation of an appropriation does not arise when a trip is purely non-official in character and non-official funds are used to pay for it. Rather, the issue arises only where an official activity is supported by non-appropriated funds and where there is no authority for that to occur.

In short, appropriated funds should not be used to pay for political events, and absent authority to the contrary, political funds should not be used to pay for official events. The difficulties of applying these principles arise because both types of activities may occur on the same trip and because it is exceedingly difficult in many instances to determine what is official and what is political.

## II. What Tests Should Be Used for Determining Whether an Expense Should Be Considered "Political" or "Official?"

Because officials will wish to ensure that appropriated funds are used only to pay for expenses associated with official events and are not used to pay for political expenses, it will be necessary to determine on a case-by-case basis whether an expense is official or political in character. As discussed generally above, there is unfortunately no single litmus test for making such judgments. Indeed, many events could be characterized properly as either political or official or both. Therefore, in making this determination the persons most familiar with the facts of a particular trip will have to assess all of the circumstances involved and apply a large measure of common sense. There are, however, two major variables concerning the source of the expense to be borne in mind: the nature of the event involved, and the nature of the individual involved. Either, or both, of these indicia may be useful in a particular case in determining whether a particular expense should be considered official or political.

With respect to the nature of the event giving rise to an expense, an earlier opinion of this Office, entitled "Political Trips" and transmitted to the Counsel to the President on March 15, 1977, stated the following guidelines:

---

[1] *See, e g ,* 23 Comp. Gen 694 (1944), 46 Comp. Gen. 689 (1967) *See also* 9 Comp Dec. 174 (1902), 17 Comp. Dec. 712 (1911)

As a general rule, Presidential and Vice Presidential travel should be considered 'political' if its primary purpose involves their positions as leaders of their political party. Appearing at party functions, fundraising, and campaigning for specific candidates are the principal examples of travel which should be considered political. On the other hand, travel for inspections, meetings, non-partisan addresses, and the like ordinarily should not be considered 'political' travel even though they [sic] may have partisan consequences or concern questions on which opinion is politically divided. The President cannot perform his official duties effectively without the understanding, confidence, and support of the public. Travel and appearances by the President and Vice President to present, explain, and secure public support for the Administration's measures are therefore an inherent part of the President's and Vice President's official duties (pages 11–12).

We concur with the foregoing rules of thumb, which are based largely on a common sense understanding of the nature of political and official activities.[2]

While we would hope that the foregoing generalities may be useful guides for the future, they should not be viewed as inflexible. There clearly is much room for discretion in determining whether an event giving rise to an expense is political or official. At bottom, the question is a factual one that can only be answered by those most familiar with the particular facts of a given situation. Nonetheless, in general, if the purpose of an event on a trip is to promote the partisan aims of the President's or Vice President's party or candidates of that party, then expenses incurred in performing the event would generally be political in character. Should particular questions arise about specific events, we would be glad to provide more concrete advice concerning them.

The second variable that may, in some circumstances, determine the character of a particular expense incurred on a trip is the nature of the individual whose activity generates the expense. There are some individuals who, in particular situations, are on a trip for inherently official or political purposes. Expenses incurred by them should generally be viewed as either official or political depending on their particular role. For instance, there are some persons whose official duties require them to be with the President, whether or not the President himself is on official business.[3] This group includes the President's doctor, his military aide, and the Secret Service agents responsible for his protection.[4] A similar group would exist for the Vice President. Expenses incurred during travel with the President or Vice President by this group of individuals should be

[2] Although we generally agree with this earlier opinion of this Office, we would note that much of its advice is of a prudential, not strictly legal, character In the present memorandum, we do not undertake to specify rules that are not legally mandated. Moreover, the earlier opinion itself takes pains to stress the flexibility that exists in determining whether, in a particular case, travel by the President is official or political (see page 7).

[3] This point is the same as stated in the March 15, 1977, opinion of this Office, entitled "Political Trips" (pages 9, 15–16).

[4] This list is not intended to be exhaustive The President may, in his discretion, determine that others are necessary members of his official party whenever he travels.

217

considered official regardless of the character of the event that may be involved in a given trip.

Similarly, on an otherwise entirely official trip, an individual may accompany the group for purely political reasons. As a rule, any expenses specifically incurred by such individuals should be considered political expenses, regardless of the events involved in the trip.

In short, as we noted at the outset of this section, there is no single test for determining whether an expense is political or official in character. Viewed generally, expenses of individuals whose official duties require them to travel with the President or Vice President should normally be considered official. Expenses of individuals who are on a trip for purely political reasons should normally be considered political. Expenses associated with individuals who are not necessarily serving in either a wholly official or wholly political capacity— such as the President or Vice President or other individuals in the White House who may, consistent with their official duties, perform political functions— should normally be judged to be official or political depending on the character of the event giving rise to the expense.

### III. On a Mixed Trip Including Both Official and Political Activities, Can Certain Expenses Be Apportioned Between the Government and a Political Committee?

Based on what we have said thus far, the following conclusions may be stated. First, if all events during a trip are political in character, the only official expenses on the trip would be those associated specifically with the group of individuals whose official duties require them to accompany the President and Vice President. Second, if all events on a trip are official in character, the only political expenses would be those associated specifically with individuals who accompany the President and Vice President on the trip for purely political reasons. This means that on a trip that is entirely official, any expenses associated with the President or Vice President or others who are not necessarily on the trip for purely official or purely political reasons should be considered official. Conversely, on a trip that is entirely political, expenses associated with persons who are not necessarily on the trip for wholly official or wholly political reasons should be considered political.

A question remains, however, concerning expenses associated with individuals whose purpose for being on a trip is not necessarily only political or only official, when the trip itself is for both official and political purposes. Specifically, on a mixed trip involving a substantial official element and a substantial political element, can the expenses associated with the President or Vice President or others who are on the trip for both reasons be apportioned between the government and a political committee? There are several possible views on this question.

It might be argued, for example, that the performance of an official event during a trip could not have been accomplished without incurring certain expend-

itures and that, therefore, the entire cost of the trip should be treated as official and should be paid out of appropriated funds, with the sole exception being incremental expenses associated specifically with a political activity (e.g., a hotel bill for an extra night's lodging necessitated entirely by a political event on the following day). This approach is grounded on the assumption that to permit any other apportionment of the cost of a trip to a political committee would allow the official budget to benefit from an unauthorized augmentation of appropriations. Since the expenses incurred were necessary to accomplish an official purpose, on this view they must be paid for in full with appropriated funds.

The opposite theory could also be advanced. That is, if there is any political activity on a trip, a political committee could theoretically be required to pay for the trip's entire cost (except for incremental expenses specifically attributable to an official event). This theory proceeds on the assumption that any other approach would allow the President's or Vice President's political activities to be subsidized by their official appropriations.

A third approach, which in effect combines the first two, is suggested by a prior opinion of this Office, transmitted to the Counsel to the President on September 17, 1980, and entitled "Reimbursement of Travel Expenses Incurred by Government Officials on Mixed Official and Campaign Trips." That opinion responded to a question about the operation of a Federal Election Commission (FEC) rule under which a campaign committee's share of the costs of a mixed official-political trip is the full cost of the trip from the point of origin through each campaign-related stop and back to the point of origin. 11 C.F.R. § 9004.F.[5] After the FEC adopted this rule, the White House Counsel's Office assumed that the expense to the government for such a trip would be the difference between the trip's actual cost and the amount reimbursed by the campaign committee. However, the Counsel's Office was concerned that such diminishment of the actual expense to the government could constitute an unauthorized augmentation of appropriations. For that reason, it sought an opinion of this Office.

The September 17, 1980, opinion concluded that, if the government were to pay only the difference between the actual cost of a trip and the amount reimbursed by the campaign committee under the FEC rule, there would be an unauthorized augmentation of appropriations (assuming no authority to accept contributions) so long as the government were allowed to "reap the benefit" of the enhanced payment of expenses by the campaign committee under the FEC rule. To cure this problem, the opinion stated that an accounting system should be devised to charge "the full allocated travel costs to both the Campaign Committee and the government agency," with a deposit of any excess funds in the Treasury (page 4, emphasis added).

While we express no view regarding the correctness of this third approach during the period of a presidential election campaign when the Federal Election

---

[5] For instance, if a trip from Washington, D C , to Chicago were taken for official purposes, and then a trip from Chicago to Denver were taken for campaign purposes (with a return from Denver to Washington, D C ), under the FEC rule the campaign committee would have to make reimbursement for the cost of travel from Washington, D.C., to Denver and back to Washington, D C.

Commission's regulations would be applicable, we do not believe that the approach correctly reflects the requirements that apply outside the campaign period. We believe that the first two approaches are unreasonable solutions to the problem because each tilts the scales completely toward one of the two conflicting guiding principles and results either in an inappropriate augmentation of appropriated funds or the subsidization of political activity with appropriated funds. The approach of the September 17, 1980, Office of Legal Counsel opinion attempts to address these problems in, we believe, an unrealistic and unnecessary way by requiring one trip to be paid for twice—both with official funds *and* with political funds.

In our view, a fourth approach which attempts in good faith to apportion the costs of such a trip on the basis of a reasonable division between the time spent on political activities and the time spent on official activities is a more reasonable and a legal resolution of the underlying problems. For example, if 50 percent of a single day's events are political and 50 percent are official, approximately 50 percent of the costs associated with participants whose roles are not necessarily either official or political should be reimbursed by the political committee and 50 percent should be paid from appropriated funds, unless such an apportionment, under the particular circumstances, would on some basis be unreasonable or inequitable. We believe that such an approach faithfully accommodates both of the basic norms discussed in part I.

Thus, when there is a mixed trip involving the President or Vice President, the purpose of which is both substantially political and substantially official, expenses should be paid in the following manner: first, expenses for individuals who are necessarily official (Secret Service, etc.) should be paid for with appropriated funds; second, expenses for individuals who are necessarily political (campaign officials) should be reimbursed by a political committee; third, incremental expenses specifically attributable to an official event should be paid from appropriated funds, and incremental expenses specifically attributable to a political event should be paid from political funds; and finally, expenses for individuals whose official roles permit them to perform political activity should be reasonably and equitably apportioned so that a share reflecting the amount of a trip that is political in character should be paid by a political committee. If these general guidelines are followed, then the purposes of using appropriated funds for official purposes but not using such funds for political purposes will be achieved.

We must reaffirm the limited nature of our conclusion about apportionment. As we have indicated, some categories of expenses may have to be treated as entirely official or entirely political, and thus they would not be subject to apportionment. Apportionment would be appropriate only with respect to expenses associated with individuals whose official roles permit them to perform political functions, and only when those individuals are on a trip that itself is not entirely political or wholly official in nature.[6] In such circumstances, to accom-

---

[6] We are not suggesting any specific formula for apportionment, for several formulae may be equally reasonable

Continued

modate both of the guiding norms noted in part I, we believe that an apportion-
ment of expenses between appropriated funds and the funds of a political
committee which reflects the relationship between official and political activities
may be made. We urge caution in applying such an approach, particularly in
retaining records to substantiate any characterization of an event or trip as
political or official that could be used in the future if, for instance, there should be
an audit by the General Accounting Office.[7]

## IV. Other Considerations

We would add one qualification to the preceding discussion. As noted in part I,
official expenses, including expenses incurred during the President's and the Vice
President's travel for official purposes, may not be paid for by funds other than
those appropriated for official purposes unless there is authority to the contrary.
An acceptable source of such authority would be a congressional authorization,
in the form of a statute, for the President and the Vice President (or their
respective offices) to accept gifts to defray their official expenses. This Office has
concluded in the past that the White House Office and the Office of the Vice
President do not have statutory authority to accept contributions or gifts. This
legal premise provides the basis for the conclusion that the payment by a political
committee of official travel expenses incurred by the President or Vice President
would be an impermissible augmentation of the appropriations for these offices.

However, in the course of our research for this opinion, we reviewed a
provision of law, 2 U.S.C. § 439a (1982), not considered in any of the prior
opinions on this subject by this Office or by the Comptroller General, which
appears to grant the President and Vice President gift authority, at least to the
extent of authorizing them to accept contributions to defray their ordinary and
necessary official expenses. Section 439a states in full:

> Amounts received by a candidate as contributions that are in
> excess of any amount necessary to defray his expenditures, and
> *any other amounts contributed to an individual for the purpose of*
> *supporting his or her activities as a holder of Federal office, may*
> *be used by such* candidate or *individual,* as the case may be, *to*

---

and some may be particularly well suited to particular trips For example, a formula may be predicated on the
number of hours spent on each event, the number of hours on the entire trip (including travel time) devoted to official
or political affairs, the number of events devoted to each, or if a trip is devoted to one type of event in a distant city
and another type in a nearby city on the return flight, on the relative distances travelled to each While some general
guidelines within these limits should be established for consistency in application, the overriding factor is the
reasonableness of the apportionment in a specific situation. We would not exclude the possibility of creating an
exception for de minimis involvement in official activity during a trip that would be treated as entirely political, and
vice versa. We note that previous Administrations have made use of such a de minimis exception, as indicated in the
background materials supplied to us by your office

[7] In two opinions to several Senators, dated October 6, 1980, and March 6, 1981, the Comptroller General
discussed the apportionment of travel expenses for purposes of their payment by official and political funds under the
Carter Administration (B–196862) Apportionment was not objected to by the Comptroller General. The Comp-
troller General expressly noted, as we have observed here, that there are "no guidelines of a legally binding nature
[which] have been established by legislation, judicial decision, or otherwise" (page 2 of March 6, 1981, opinion).
These opinions, coupled with prior practice by the White House, buttress our conclusion that a reasonable
apportionment may be made in the circumstances we have described.

> *defray any ordinary and necessary expenses incurred in connec-*
> *tion with his or her duties as a holder of Federal office,* may be
> contributed to any organization described in section 170(c) of
> . . . [the Internal Revenue Code of 1954], or may be used for any
> other lawful purpose, including transfers without limitation to any
> national, State, or local committee of any political party; except
> that, with respect to any individual who is not a Senator or
> Representative in, or Delegate or Resident Commissioner to, the
> Congress on January 8, 1980, no such amounts may be converted
> by any person to any personal use, other than to defray any
> ordinary and necessary expenses incurred in connection with his
> or her duties as a holder of Federal office. (Emphasis added.)

The foregoing provision authorizes "amounts contributed to an individual for the purpose of supporting his or her activities as a holder of Federal office" to be used by such individual "to defray any ordinary and necessary expenses incurred in connection with his or her duties. . . ." The term "Federal office" is defined separately as including the Offices of the President, the Vice President, and Members of Congress. 2 U.S.C. § 431(c). Accordingly, on its face, this provision would appear to authorize use by the President and Vice President of amounts contributed to such individuals for the purpose of supporting their activities as President or Vice President. This would include expenses incurred in the course of official travel.[8]

We have consulted the legislative history of 2 U.S.C. § 439a, first adopted as part of the Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93–443, 88 Stat. 1289, and have found nothing that would be inconsistent with such an interpretation. However, in the limited time available, we similarly have found nothing to indicate that Congress specifically considered the provision's application to the Office of the President or Vice President. The brief floor discussion of this provision[9] and of a similar provision in a predecessor bill[10] merely focused on its application to Members of Congress, who traditionally have been permitted to accept gifts to defray the expenses of their offices.[11] A regulation promulgated by the Federal Election Commission under this provision repeats the language of the statute. *See* 11 C.F.R. §§ 113.1 & 113.2. Thus, we are aware of no indication that Congress intended it to mean anything other than what it clearly says: that elected officials including the President and the Vice President may accept gifts to defray expenses incurred in connection with the performance of their duties.

---

[8] Of course, any applicable conflict of interest provisions would have to be borne in mind if § 439a were to be used as authority for the receipt of contributions for the President's or Vice President's travel expenses.

[9] *See* 120 Cong. Rec. 35139 (1974).

[10] *See* 119 Cong. Rec. 26606–07 (1973).

[11] Congress amended the provision in 1980, Pub. L. No. 96–187, §§ 105(4), 113, 93 Stat. 1354, 1366 (1980), generally to prohibit a federal official from converting contributed funds for his or her personal use. A specific exemption to this provision also was added for individuals who were Senators and Representatives on January 8, 1980.

Nevertheless, we would caution against complete reliance on § 439a until further consideration has been given to the authority under that statute for political committees to make contributions, and until the matter has been coordinated with the Federal Election Commission. In this connection, the Federal Election Commission has authority to render advisory opinions to federal officeholders about "the application of a general rule of law stated in" the Federal Election Commission Act, of which § 439a is a part. *See* 2 U.S.C. § 437(b). To our knowledge, the Commission has not been called upon to and thus has not formally addressed the application of § 439a to gifts made to the President or the Vice President to defray the expenses of their offices.

Moreover, even if § 439a ultimately is to be relied upon to grant gift authority for the President and Vice President, we would advise that guidelines be established for the receipt of contributions under the provision. This will be necessary since the Standards of Conduct regulations applicable to agencies in the Executive Office of the President, 3 C.F.R. §§ 100.735–(1)–(32), were not drafted with the intent of regulating contributions to meet the official expenses of the President and Vice President. Those regulations as currently drafted might not be consistent with full implementation of § 439a if that were desired.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

223